In re The BOLIN OIL COMPANY, Debtor.

The BOLIN OIL COMPANY, Debtor/Plaintiff,

v.

RELIANCE INSURANCE COMPANY, Firestone Park and Evans Insurance Agency, Inc., Defendants.

Bankruptcy No. 584–3.
Adv. No. 585–0189.

United States Bankruptcy Court, N.D. Ohio.

Aug. 14, 1985.

John Guy, Akron, Ohio, for plaintiff Bolin Oil Co.

Richard Gurbst, Cleveland, Ohio, for defendants.

## FINDING AS TO INSURANCE CONTRACT

H.F. WHITE, Bankruptcy Judge.

On July 30, 1985 at 4:26 P.M. the debtor filed a Complaint Seeking to Enjoin The Threatened Termination of Insurance Contract by Reliance Insurance Company. The debtor requested a temporary restraining order as to the cancellation of the insurance policy effective August 1, 1985.

The court granted a temporary restraining order against Reliance Insurance Company, or its agents, Firestone Park and Evans Insurance Agency, Inc., and scheduled a preliminary hearing to be held on the 9th day of August 1985 at 10:30 A.M. at which time a motion was filed to dismiss by counsel for Reliance Insurance Company, Richard Gurbst of Squire, Sanders & Dempsey. The court at that time continued the temporary restraining order until August 14, 1985 at 12:00 noon and directed the plaintiff to file a brief with this court and with the attorney for the defendant by August 12, 1985 at noon. The brief was filed as ordered by the court and a reply brief was filed on August 12, 1985 at 2:50 P.M. by the attorney for Reliance Insurance Company.

It was determined at the hearing that there was little dispute as to the actual events that took place. The court finds that Bolin Oil Company is a debtor under a Chapter 11 proceeding with this court which was filed on January 4, 1984. At that time it appeared that Bolin Oil Company had insurance; however, it was not renewed with the insurance company at the expiration of said policy and the debtor did secure insurance through the Firestone Park and Evans Insurance Agency, Inc. with Reliance Insurance Company on April 20, 1985. One policy, No. JA 0382071, which was for a term of one year and was to expire on April 20, 1986 was a business automobile policy. The other policy, No. JI 0382760, was comprehensive insurance. The court finds that Reliance Insurance Company at the time the insurance policies were issued was aware that the debtor was under a Chapter 11 proceeding in the U.S. Bankruptcy Court.

The debtor is engaged in the oil business and has approximately 3,500 customers to whom it delivers oil. The debtor also operates several gas stations and has a lawn service. Insurance is an essential business expense for the debtor because of the nature of the debtor's business.

The debtor made the premium payments on the policies as required. The policies issued, being debtor's Exhibits 3 and 4, provided that the policies could be cancelled by either party upon thirty-days notice, debtor's Exhibits 1 and 2.

On June 20, 1983 pursuant to defendants' Exhibits 3 and 4, notice was given to Bolin Oil Company at its address that the policies would be cancelled effective August 1, 1985 at 12:01 A.M. Standard Time. The reason given for cancellation of the policies was "Underwriting Reasons". Although at the hearing neither party set forth the specific "underwriting reasons" it was disclosed to the court in the letter of July 15, 1985 written by Russell H. Dunbar, an associate of Firestone Park and Evans Insurance Agency, Inc., that the policies were being cancelled because of the financial statement of Bolin Oil Company. It was indicated at the hearing that the insurance company had become aware of several gasoline tanks that were at least 20 years old that were located close to a stream in Ohio

which could possibly result in environmental damage.

The court further finds that the insurance company did give proper notice of the cancellation as required by the provisions of the contract. The court further finds that the letter of Russell H. Dunbar written to Frank P. Kaufmann, attorney for the debtor, was not the notice of cancellation that counsel referred to in the complaint as it was alleged by the president of Bolin Oil Company that he had received within five days of mailing the June 20, 1985 letter of cancellation of the insurance policies. Therefore, it is evident that the defendants did comply with the Revised Code of Ohio as to the cancellation.

It is also apparent from the testimony of Mr. Bolin and the letter from Russell H. Dunbar that the debtor does have other alternative sources from which to procure insurance; however, the rates would be substantially higher.

## ISSUE

Whether the bankruptcy court has the authority under the Bankruptcy Code to grant a permanent restraining order against the defendants as to a post-petition contract entered into by the debtor and Reliance Insurance Company.

## DISCUSSION OF LAW

The briefs filed by the parties cite a single case, with varying interpretations, in support of their positions. *In re Gulf Tampa Drydock Co.*, 49 B.R. 154, 13 B.C.D. 159 (Bankr.M.D.Fla.1985). However, that case is inapposite here. The court is called upon to decide whether a permanent injunction should issue to prohibit the insurer's cancellation of a *post-petition* insurance contract. In the *Gulf Tampa Drydock* decision the debtors had already been issued a binder under which the insurer provided the debtors insurance coverage *before* the debtors filed their Chapter 11 petitions. In addition, the court made a specific finding in its opinion that the primary motive for the cancellation of the policy was the insurer's "recently acquired knowledge that the Debtors [had] filed bankruptcy." *Id.* 49 B.R. 154, 13

B.C.D. at 161. In the case *sub judice*, the insurance contract was entered into well after the debtor filed its chapter 11 petition, and with the insurer's knowledge of the debtor's chapter 11 reorganization. The *Gulf Tampa Drydock* court was not the first to consider the issue of whether a bankruptcy court has the power to enjoin the cancellation of a pre-petition insurance contract. Courts have found the power to enjoin the cancellation of a pre-petition insurance contract under 11 U.S.C. sect. 105, *In re Amber Lingerie, Inc.*, 30 B.R. 736 (Bankr.S.D.N.Y.1983), and under 11 U.S.C. sects. 362(a)(3) and 363(*l*), *In re Cahokia Downs, Inc.*, 5 B.R. 529 (Bankr.S.D.Ill. 1980), if the real reason for cancellation is the bankruptcy of the debtor. If the insurance company is able to make a sufficient showing of its substantial increased risk, apart from the mere insolvency of the debtor, such a showing could tip the balance in its favor. *Amber Lingerie, Inc.*, 30 B.R. at 737. *See also, Cahokia Downs, Inc.*, 5 B.R. at 532. The Bankruptcy Code does not enlarge the rights of the debtor under a contract, and it doesn't prevent the termination of a contract by its own terms. *In re Advent Corp.*, 24 B.R. 612, 614 (Bankr. 1st Cir.1982) (dicta); *In re Heaven Sent Ltd.*, 37 B.R. 597, 598 (Bankr.E.D.Pa.1984). *See also, In re Nashville White Trucks, Inc.*, 5 B.R. 112, 117 (Bankr.M.D.Tenn. 1980). The bankruptcy court cannot compel an insurance company to renew an expired policy with the debtor. *Heaven Sent Ltd.*, 37 B.R. 597; *Gulf Tampa Drydock Co.*, 49 B.R. 154, 13 B.C.D. at 161. The cancellation of an executory contract cannot be enjoined by a bankruptcy court under 11 U.S.C. sect. 365(e) even if the bankruptcy of the debtor/insured triggered the insurance company's final decision if the pre-petition relationship between the parties was plagued with problems. *Nashville White Trucks, Inc.*, 5 B.R. 112 (Bankr.M.D. Tenn.1980).

Upon a careful review of the authorities, the only case which this court could find regarding the cancellation of a post-petition insurance contract issued to a chapter 11 debtor is *In re Douglas*, 18 B.R. 813

(Bankr.W.D.Tenn.1982). The court held that section 525 is inapplicable as it is addressed to alleged discriminatory treatment by a governmental or quasi-governmental authority. *But see*, Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, sect. 309 (a private employer may not discriminate against a person·who has been a debtor in bankruptcy). The court found that the Bankruptcy Code does not prevent private parties from discriminating against the debtors, and the insurance company was free to cancel the policy pursuant to its cancellation provisions.

█ The underlying policy for protection of the debtor under sections 362(a)(3), 363(*l*), and 365(e) of the Code does not obtain in a post-petition case. The pre-petition contract cases focus on the cancellation of the contract by a creditor in retaliation for the filing of bankruptcy by a debtor, or on the discrimination against the debtor on the basis of its bankruptcy. In a post-petition insurance contract case as the case *sub judice* the insurance company enters into the contract with the debtor with knowledge of the bankruptcy of the debtor, and the cancellation of the insurance contract is more likely to be based upon the sound actuarial judgment of the insurance company. This court also "finds nothing in the Bankruptcy Code which enlarges the rights of the DIP under the contract or which prevents the termination of the insurance under the policy's own cancellation provisions." *Douglas*, 18 B.R. at 815. Both the debtor and the insurance company had an equal right to terminate the contract. The court is in agreement with counsel for the defendants: "To require an insurance carrier to abandon its contractual rights, as plaintiff's request [sic], is tantamount to sending notice to all insurance companies that when dealing with a debtor-in-possession, contractual provisions are of no import." Defendants' Memorandum of Law [in support of its] Motion to Dismiss at 3–4. This court recognizes the parties' freedom to contract.

Accordingly, the court finds that the defendants' motion to dismiss the action is well-taken. A separate order shall issue hereon.